IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST DAN and ELSIE DAN,
on their own behalf and as parents
and next friends to Eric Dan, a minor,

          Plaintiffs,

vs.                                              No. CIV  01-25 MCA/LFG-ACE

UNITED STATES OF AMERICA et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT UNITED STATES' MOTION TO STRIKE
## PLAINTIFFS' EXPERT WITNESS DESIGNATION

THIS MATTER is before the Court on the United States' Motion to Strike Plaintiffs' Expert Witness Designation of Dr. Jeffrey Abel [Doc. 90], filed December 26, 2001. The United States argues that Plaintiffs failed to comply with the mandatory expert disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B).

## Background

The Court's scheduling order entered on October 18, 2001 required Plaintiffs to disclose the identity of expert witnesses and to provide Fed. R. Civ. P. 26 expert reports by November 19, 2001.[1] Defendants were to identify their experts and submit their reports one month later. These dates were subsequently extended to November 26, 2001 and December 28, 2001. The deadline for discovery is February 28, 2002.

---

[1] In a subsequent telephonic hearing, the Court granted Plaintiff's request to extend the deadline within which to identify certain experts and to provide certain expert reports. The Court extended the deadline for Plaintiff to designate its pediatric neurologist, life care planner and nursing expert to a later date. This extension, however, did not affect the deadline for Dr. Jeffrey Abel or Kelly DeFeo. That deadline remained November 19, 2001.

**Discussion**

The federal rules mandate that expert reports "shall contain" the following six items:

1. a complete statement of all opinions to be expressed and the basis and reasons therefor;

2. the data or other information considered by the witness in forming the opinion;

3. any exhibits to be used as a summary of or support for the opinion;

4. the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;

5. the compensation to be paid for the study and testimony; and,

6. a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

These disclosure obligations are mandatory and are intended to further the purposes of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* Expert reports are intended to fully alert opposing parties of the opinions that will be offered and the basis for each opinion to be expressed at trial. The Advisory Committee Commentary to Rule 26 states:

> Paragraph (2)(B) requires that persons retained or specifically employed to provide expert testimony . . . must prepare a detailed and complete written report stating the testimony the witness is expected to present during direct examination, together for the reasons therefor.

Plaintiffs' proposed expert report is deficient in a number of areas. For example, rather than submitting a report for each witness, outlining the opinion each witness is to offer as contemplated by Rule 26, Plaintiffs submitted a "joint report" for Dr. Jeff Abel and nurse Kelly C. DeFeo. Because it is a joint report, it is difficult, if not impossible, to determine which witness is offering an opinion on what subject.

The Court identifies the following portions of the report that are deficient. On page 1, paragraph 1 of the report, it states, "Ceftizoxime500 mg. IV is given in the ER, and Flagyl 250 mg. is sent with Eric to the Operating room but *we* cannot see anywhere on the chart that this drug was ever given." [emphasis added]. Similarly, page 1, paragraph 2, reads, "The intraoperative fluid given was adequate (although *we* believe that this child could probably have used a little more . . . .") [emphasis added].

The use of the collective "we" in these statements gives the appearance that both witnesses are providing a singular opinion, that is, the identical opinion by two separate witnesses. So, too, on page 1, paragraph 3 of the report, states, "[*W]e* see no notation of oxygen or anesthetic gases given." [emphasis added]. Again, this statement appears to be a joint statement that neither Dr. Abel nor nurse DeFeo saw such notations on the child's chart. However, in paragraph 4, the report suddenly shifts from a joint opinion to an individual opinion. The paragraph states in part, "There is a drug which *I* cannot make out the name of, it may be Rocuronium which is a muscle relaxant." [emphasis added]. Is this Dr. Abel or nurse DeFeo speaking? The reader is unable to make out the name. Similarly, the rest of paragraph 4 on page 1 of the joint report includes opinions concerning the use of drugs, but it is impossible to determine who is offering the opinion, as there is no explanation concerning the switch from "we" to "I."

Since page 1, paragraph 4, seems to be expressing an individual opinion, what about the opinions appearing in the paragraphs following, for example, page 1, paragraphs 5 and 6, and page 2, paragraphs 1 through 6? Are these joint or singular opinions? The last statement in paragraph 4, page 1, apparently refers to an individual opinion. Are the last of the opinions offered in the following statements and thereafter individual or joint opinions? The same is true for the opinions

3

appearing on page 2, paragraphs 1 through 5, joint or individual? If individual, whose opinions are they? The "I" is never identified, and the Court cannot ascertain whether it is Dr. Abel or nurse DeFeo's opinion.

Just as suddenly as the report shifted from a joint to an individual report, it appears to revert back to a joint opinion. For example, page 2, paragraph 6, of the report states, "It appears that another IV was attempted, (*we* do not know if one of the IV lines is not working or if they feel that they needed a third IV line)." [emphasis added]. The collective "we" would again indicate two opinions, but it is not clear. For example, is it both Dr. Abel and nurse DeFeo who do not know if the IV line is working and both who feel that a new IV is necessary? The Defendant should not be put into the position of having to guess the answer.

The "flip-flop" pattern appears again in the last statement on page 2, paragraph 6. This paragraph refers to a joint opinion, but the opinions offered on page 3 are not clearly joint or separate. If the opinions expressed in those six or seven paragraphs were intended to be joint, why are the following paragraphs written in the first person singular? On page 3, paragraph 8, the following statement appears, "Sometime during this Dr. Fogelberg arrived but *I* cannot make out the time." [emphasis added]. That paragraph goes on to offer opinions concerning the length of time the patient had a right mainstream incubation. But again, the "I" is never identified. Whose opinion is it? Since the prior statement, page 2, paragraph 6 is a collective "we", and this statement refers to the singular "I," it is unclear as to who is offering this opinion.

The same is true for page 4, paragraph 4. The report states in part, "*I* see that there must be a fluid bolus given but it is not clearly recorded." [emphasis added]. With the continual shifting between the singular and the plural, and the individual and collective, it is confusing and misleading.

4

The problem is exacerbated in the section of the report concerning "Impression." On page 6, paragraph 1, it states that, "It would appear that Eric was a very sick child upon admission. Although he progressed uneventfully through his surgery, *we* believe that Eric was still in a negative fluid balance." [emphasis added]. At the bottom of that page, paragraph 5, the writer concludes, "This, in *our* opinion, lead to his near complete cardiopulmonary arrest and is what caused his anoxic Encephalopathy and accompanying sequel." [emphasis added; underscoring in original]. This again is a joint opinion, but also one that appears to go beyond the expertise of a nurse.

Apart from the fact that this report continually shifts from the singular to the plural and the individual to the joint, there are numerous other failings. The report is not signed by either of the proposed experts. The report fails to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). The report states conclusions, but not the complete basis for the opinions offered. The report does not disclose all the information considered in formulating the opinion.

Advance knowledge of an opponent's proof on a claim or defense is an invaluable aid in deciding whether to settle or litigate. If a party is better able to evaluate the strength and weakness of the case, settlement is more likely. Conversely, if the case is one that must be tried, advance knowledge of the opponent's evidence assists in preparing to meet the proofs at trial. The case can be presented more efficiently, expeditiously and economically, thus, fulfilling the purposes of the Civil Justice Reform Act.

The Advisory Committee Commentary to the 1993 Amendments to Rule 26(a) states: "this subdivision [26(a)] imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." The very basic information contemplated by the Advisory Committee is

5

lacking in this joint report. It requires a Coleridgean suspension of disbelief to accept that two separate, independent experts, with different credentials and qualifications and different disciplines have exactly the same opinion for the same exact reasons, and that the basis for the opinion does not differ one iota.

Trial by ambush is not an acceptable litigation strategy. The automatic disclosure rules, when considered in light of liberal discovery favored by federal courts, mandate full disclosure at an early stage of the proceedings. The report must be "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Advisory Committee Commentary, ¶ 2.

Defendant also points to additional deficiencies. The report fails to disclose the compensation being paid to the experts; fails to contain a listing of cases wherein the expert or experts have testified in past; and fails to contain an updated curriculum vitae. Defendant's concerns are legitimate. Beyond these problems, the Court raises a separate concern about the report and Plaintiffs' response. Plaintiffs' original joint report has since been revised because its expert wished to make "minor revisions to the joint report and polish it up a little," and that the second report "closely parallels the first." (Plaintiffs' response). This is impermissible.

There is no provision in the federal rules that permits a party to shore up, buttress or strengthen an expert's report. Nor is there any authority permitting one to "polish up" a previously submitted report. While Rule 26 specifically authorizes a party to supplement its expert report, the rule permitting supplementation is limited.

> A party who has made disclosure under subdivision (a) or responded to a request for discovery with disclosure or response is under a duty to supplement or correct the disclosure or response to include

> information thereafter acquired if ordered by the court in any of the following circumstances:
>
> > (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect, and if the additional or corrected information has not otherwise been made known to the other parties during the discovery process or in writing.

However, under a claim of "polishing up" a report, a party may not offer new opinions not included in the initial expert report. Moreover, Rule 26 contemplates that a complete report be filed within the time constraints indicated by the court. The rule makes no provisions for "preliminary reports" followed by "supplementary reports." Rather, Rule 26 requires production of a "detailed and complete report" with full disclosure of all opinions that will be offered at the time of trial, together with full disclosure of the basis for the opinions to be offered.

To allow supplementation of reports with new opinions would thwart opposing counsel's ability to evaluate the strength and weakness of a case and to prepare to meet the proofs at trial. Parties are not permitted to "shore up" an expert's opinion subsequent to the issuance of the initial report. This practice would mean there would be no finality to any opinion. Each side, in order to buttress its case, could "supplement" existing expert reports with new or expanded opinions. Such a practice would circumvent case management deadlines and would hinder, rather than facilitate, the ultimate disposition of litigation. Further, it would increase the costs of litigation and contribute to delay.

Not long ago, Tenth Circuit Judge, Paul J. Kelly, sitting as a designated district judge, rejected a plaintiff's argument that he could file new opinions to "supplement" his prior expert report.

Coleman v. National Railroad Passenger Corp. (Amtrak), et al., No. CIV 99-474 PK/LFG (D.N.M. Jan. 12, 2000). Judge Kelly wrote that "[a]n expert report 'shall contain a complete statement of all opinions to be expressed and reasons therefor . . . .'" (*quoting* Fed.R.Civ.P. 26(a)(2)(B)). In Resolution Trust Corp. v. Gregory, No. CIV 94-052 PK/LFG (D.N.M. Dec. 13, 1995), Judge Kelly, again sitting as a designated district judge, explained that "[a]lthough Fed. R.Civ.P. 26(e) requires a party to 'supplement or correct' disclosures upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness report (indeed, the lawsuit from the outset)."

Here, it unknown whether the subsequent "polished-up" report changes opinions from the original report served. A party may supplement the original report only if it was incorrect or incomplete. Rule 26(e)(l). The supplementation does not allow any new opinions or expansion of opinions previously submitted.

The consequences of failing to comply with the strict requirements of Rule 26 can be severe. In cases where a party fails to timely identify experts or file a report, courts have generally sanctioned such violators by precluding such expert testimony or the report. For example, in GEM Realty Trust v. First Nat'l Bank of Boston, 1995 WL 127825 at *5 (D. N.H. March 20, 1995), the plaintiff violated the court's pretrial directive by failing to disclose its proposed expert within the time frame established by the court. The court determined that the appropriate sanction was to preclude the expert from testifying.

Similarly, in Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 283-84 (8th Cir.), *cert. denied*, 516 U.S. 822, 116 S. Ct. 84 (1995), the plaintiff failed to file an expert report in accord with the court's scheduling order and requirements of Rule 26. The report contained a twenty-line

8

affidavit without all of the information required by Rule 26. Defendant filed a motion in limine seeking to exclude the expert or limit the testimony to the opinion offered in the initial report. The plaintiff argued that the expert was available for deposition, thus, the full extent of the expert's opinion could be discovered. The court rejected plaintiff's argument and limited the expert to the information provided in his initial report. On appeal, the circuit court affirmed, stating, "[t]he failure to comply with the scheduling order is not excused because [defendant] elected to depose Kelsey [the expert]." Id. at 284. To rule otherwise would frustrate the purpose of the rule, which is, "[t]he elimination of unfair surprise to the opposing party and the conservation of resources." Id. *See also* Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995)( "[t]he requirements of Rule 26(a) are mandatory as to any expert retained to testify. If the expert is unable or unwilling to make the disclosures, he should be excluded as a possibility for retention as an expert witness in the case.")

## **Conclusion**

Plaintiffs expert reports do not comply with the requirements of Rule 26(a)(2)(B). However, excluding Plaintiffs' experts as witnesses would be a devastating and perhaps fatal blow to Plaintiffs' ability to successfully prosecute their case. Plaintiffs provided Defendants with their reports early on during the administrative process, and some of the other deficiencies, i.e., failure to sign, or failure to provide all of the required information under Rule 26, can be cured.

Thus, rather than striking the reports and the experts, the Court requires that Plaintiffs submit separate expert reports in full compliance with Rule 26 to Defendant. The reports shall be submitted within thirty days of the date of this Memorandum Opinion and Order. The Court will grant the Defendant an extension of time to take these experts' depositions by an additional thirty days. The expanded time may not be used for any other discovery, but only for depositions, if necessary, of the

9

experts on their completed expert reports.

The Court will award Defendant their attorney fees as a sanction for Plaintiffs' failure to properly comply with the requirements of Rule 26.

Defendant should submit an appropriate fee application for fees incurred in this motion.

_____
Lorenzo F. Garcia
United States Magistrate Judge