IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNEST DAN AND ELSIE DAN,
on their own behalf and as parents
and next friends to Eric Dan, a minor,

                Plaintiffs,

v.                                                     CIV No. 01-25 MCA/LFG ACE

UNITED STATES OF AMERICA,
et al.,

                Defendants.

## FINDINGS OF FACT AND
## RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on an application for approval of a settlement between Plaintiffs Ernest and Elsie Dan and Defendant J.M. Russell. Court approval is necessary because of the presence of Eric Dan, who is a minor.[2] Having heard the presentations of counsel, along with the testimony of the parents Ernest and Elsie Dan, and having considered the report and recommendation of the Court's guardian ad litem presented at a hearing on June 4, 2002, the Court finds:

---

[1] Parties were advised of their right to file objections to this report and recommendation within ten days, pursuant to 28 U.S.C. § 636(b)(1). However, in order to expedite the approval of this settlement, counsel agreed at a June 4, 2002 hearing that they had no objections to the Court's proposed findings and recommended disposition.

[2] The general rule is that the court must give approval to a settlement when minor children are involved. The court "has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court itself." Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by* Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

**Findings**

1. On July 19, 2001, Ernest and Elsie Dan, on their own behalf and as next friend of their child Eric Dan ("Eric"), filed a First Amended Complaint for Medical Negligence against Defendants, including J.M. Russell ("nurse Russell" or "Russell"), claiming that because of Defendants' negligence, their son Eric suffered severe anoxia that rendered him quadriplegic and unable to care for himself. [First Amended Complaint.]

2. The medical treatment giving rise to this lawsuit occurred on July 21, 1998, when Eric, who was four years old then, was admitted to the Northern Navajo Medical Center ("NNMC") with an appendicitis. The NNMC is owned and operated by the United States and is located in Shiprock, New Mexico. After being admitted on July 21, an appendectomy was performed on Eric, and Plaintiffs claim that Defendants were negligent as to his medical care, both during and after the procedure.

3. The settlement at issue pertains to allegations against Defendant J.M. Russell, a nurse provided to NNMC by Staff Relief, which supplied nursing staff to NNMC, through contracts with the government.

4. Eric Dan's injuries allegedly consist of permanent debilitating neurological impairments, as a result of the treatment he received on July 21, and he is not expected to recover full brain function. [First Amended Complaint.] He requires 24 hour a day attendant care, and allegedly will require, in the future, medical and nursing care, hospitalization, medical treatment, surgery, and therapeutics. Ernest and Elsie Dan also assert a loss of consortium claim and seek damages for emotional distress, loss of enjoyment of life and financial losses. [Id.]

5. The parties previously participated in court-ordered settlement facilitation but were unable to resolve this matter. The parties, however, continued to discuss possible settlement after the settlement conference and Plaintiffs were able to reach a settlement with nurse Russell, subject to the Court's approval. The terms of that settlement include a payment of $500,000 to Plaintiffs, part of which is to be placed in a structured settlement.

6. John Tiwald was appointed guardian ad litem as an "arm of the court" for Eric and was present at the June 4 hearing to approve settlement.

7. Mr. Tiwald conducted extensive and in-depth work on this case, including a review of the pleadings, documents, life care plan report for Eric and expert reports. He met with Mr. Borg, Plaintiffs' counsel, and discussed at length the proposed settlement with Russell. He also met with Ernest and Elsie Dan, with Mr. Borg and apart from Mr. Borg. Finally, he also discussed the proposed settlement with Mr. Beach, Russell's attorney.

8. On June 4, 2002, the Court held a hearing on the parties' application for approval of the settlement with Russell. Counsel for Plaintiffs and Defendant attended the hearing, as did Mr. Tiwald and counsel for the United States. Ernest and Elsie Dan also were present.

9. The specific terms of the $500,000 settlement are as follows: $125,000 will be placed in an annuity to replace benefits received by Mr. and Mrs. Dan from SSI that they will lose after this settlement. A sum of $660.00 per month will be paid out for the rest of Eric's life, beginning in about August 2002, with a guaranteed term of 20 years. The potential total payout of the structured settlement is approximately $1,386,000.00. The remainder will consist of a cash up-front payment to be applied to attorneys' fees, litigation costs incurred thus far, litigation costs for the remainder

of the proceeding against the United States that is going forth, and about $70,000 to $75,000 to be paid to Ernest and Elsie Dan.

10. Mr. Borg stated at the hearing that he had explained to Ernest and Elsie Dan that these settlement funds are for the purpose and benefit of their son Eric Dan, in accordance with Leyba v. Whitley, 118 N.M. 435, 882 P.2d 26 (Ct. App. 1994), *reversed on other grounds by*, 120 N.M. 768, 907 P.2d 172 (1995). Mr. Borg also explained that some of the balance being paid out to Mr. and Mrs. Dan may be allocated to loss of consortium damages claimed by the Dans. Plaintiffs, however, could not specifically allocate what part of the $70,000-$75,000 was designated to loss of consortium damages. Part of the monies will be allocated for general family needs, and most likely a more significant amount will be placed in savings until resolution of the remainder of this case with the United States. In addition, some of the monies may be used for a new vehicle that is specially equipped to transport Eric for medical appointments.

11. Mr. Tiwald further explained that while the specifics of the allocation of this payout might sound vague, he was convinced, after speaking to Mr. and Mrs. Dan, that the appropriate protections are in place with respect to this settlement and that he is comfortable the money will be used appropriately.

12. Mr. Tiwald stated that the total settlement with Russell is reasonable, given the risks of litigation, the specific claims of Plaintiffs and the defenses of the United States. After consideration of all of the relevant factors, Mr. Tiwald recommended that the Court approve the settlement as being in the best interests of Eric Dan.

13. Mr. Tiwald's services as guardian will be paid from the settlement proceeds, and as of the date of the June 4, 2002 hearing, his duties as guardian are discharged. Plaintiffs' counsel agreed to this payment of fees to Mr. Tiwald.

14. At the hearing, Mr. and Mrs. Dan each testified that they understood they had no obligation to settle with nurse Russell and could elect to proceed to trial against Russell. The Dans also testified that they further understood if the claims against Russell proceeded to trial, a jury could find in excess of the settlement amount to which they have agreed. Finally, they testified that if the remainder of the case against the United States proceeds, they understood that the government might attempt to attribute all blame to nurse Russell.

15. Mr. and Mrs. Dan testified that neither of them was under the influence of any medications or substances that impaired their abilities to understand and that they had had ample opportunity to confer with their attorney regarding this settlement. They both stated that they believed the settlement was fair. Thus, the settlement is not a product of force, coercion or undue influence.

16. Mr. and Mrs. Dan also testified that they understood that Eric's condition could grow worse and he could die, that if they agreed to this settlement, the terms of the settlement were final as to the claims raised in this lawsuit against Russell, and that there would be no opportunity to reopen this litigation to seek more money, or to file new claims against Russell.

17. In addition, Mr. and Mrs. Dan testified that they understood the settlement monies designated for their son Eric were intended for his use and benefit.

**Conclusions of Law**

After consideration of the evidence, the presentations of counsel, and the guardian ad litem's report and recommendation, the undersigned Magistrate Judge concludes that the Court has jurisdiction over the parties and subject matter, and further concludes that this settlement is in Eric Dan's best interests. Therefore, the Court recommends that the settlement be approved as to Plaintiffs' claims against J.M. Russell, and that this case be dismissed as asserted against Russell and Staff Relief, with prejudice.

                                                                                                    *Lorenzo F. Garcia*
                                                                                                    Lorenzo F. Garcia
                                                                                                    United States Magistrate Judge